UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **RYAN TERANI,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 23-12510-BEM |
| | ) | |
| **ALLEN MEDICAL SYSTEMS, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER ON**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**MURPHY, J.**

Plaintiff Ryan Terani alleges that he was mistreated and fired by his former employer, Defendant Allen Medical Systems, Inc. ("Allen Medical"), because of his Iranian heritage and because he raised regulatory compliance issues with how Allen Medical sourced its manufacturing parts. *See generally* Dkt. 9 at 4–15 ("Compl."). Allen Medical has moved for summary judgment, Dkt. 26, disputing Terani's allegations of mistreatment and arguing that his termination was merely the product of a downturn in business and of Terani's poor performance, *see generally* Dkt. 27 ("Memo.").

Terani's claims largely turn on genuinely disputed facts. Accordingly, Allen Medical's motion is ALLOWED as to Terani's retaliation claim but is otherwise DENIED.[1]

---

[1] In conjunction with his opposition to Allen Medical's motion for summary judgment, Terani also moved to strike certain paragraphs from Allen Medical's Statement of Material Facts. Dkt. 35. In turn, Allen Medical moved to strike Terani's Statement of Disputed Material Facts as well as affidavits attached to Terani's opposition to summary judgment. Dkts. 40, 42. The Court has denied these motions as unnecessary, preferring to address record issues as necessary in the context of summary judgment. Dkt. 45.

I.     **Background**

    A.     **Factual Background**

Defendant Allen Medical manufactures products for use in the healthcare industry. Dkt. 37 at 1–11 (Plaintiff's Response to Defendant's Statement of Material Facts, or "PSOF") ¶ 1.[2] Plaintiff Terani worked for Allen Medical as a Supplier Quality Engineer from April 2017 until his termination in September 2020. *Id.* ¶¶ 4–5, 37–39. In that role, Terani was responsible for ensuring compliance with company policy and procedure related to procurement. *Id.* ¶ 5.

One issue Terani raised was Allen Medical employees' allegedly sourcing parts from unapproved vendors. *See id.* ¶ 44.[3] Terani's interventions with the sourcing team led to tension between Terani and some of his co-workers. *See, e.g.*, *id.* ¶¶ 20–27. One such co-worker stated in writing that part of the problem was Terani's "entitled attitude," which the employee opined might have been "culturally based." Dkt. 29-4 at 2. Terani testified that Michael Marino, Terani's immediate supervisor, made a similar comment to Terani directly.[4] Dkt. 33-1 at 37–38. More generally, Terani has testified that, while working at Allen Medical, he was subject to various derogatory remarks from co-workers related to his ethnicity, including being called a "terrorist." *Id.* at 25–26. Terani claims to have reported these alleged comments to Allen Medical's Human Resources Department in the fall of 2019. *Id.* at 28. Terani also posted about his alleged mistreatment publicly in online fora. PSOF ¶ 45.

In September 2019, Marino authored a review of Terani's performance at Allen Medical. *Id.* ¶ 19. For this review, Marino solicited and received written feedback from certain Allen

---

[2] Citations to the PSOF reflect facts as admitted or qualified by Terani.

[3] The parties dispute whether Terani framed his complaints as regulatory violations, per se, or as violations of company policy, but the parties do not dispute that Terani generally raised this issue. *See* Memo. at 15.

[4] Terani states that he is of Iranian heritage. Dkt. 31-1 at 19–20.

Medical employees, *id.* ¶ 20, including the above-referenced opinion concerning Terani's "entitled attitude" and "culture," Dkt. 29-4 at 2. Marino's final review, giving Terani an overall rating of "partially meets expectations," credited Terani as hardworking and knowledgeable but stated that Terani needed to work on "embodying a team-based, collaborative, and non-combative approach." PSOF ¶ 27.

In September 2020, upon Marino's recommendation, Allen Medical fired Terani. *Id.* ¶¶ 37–39. As reason, Allen Medical cites a reduction in workforce brought on by the COVID-19 pandemic and a decision to retain another employee with the same title and responsibilities but who had, according to Allen Medical, received a higher rating in an unwritten evaluation. *See id.* ¶¶ 33–36; Dkt. 39 ("Reply") at 2.

**B.    Legal Background**

On July 21, 2021, Terani filed a charge of discrimination against Allen Medical with the Massachusetts Commission Against Discrimination ("MCAD"). PSOF ¶ 42. On September 19, 2023, Terani filed this lawsuit in Massachusetts Superior Court, Middlesex County. Dkt. 9 at 1. On October 24, 2023, Allen Medical removed to federal court. Dkt. 1. In his Complaint, Terani makes claims for discrimination (Count I) and for retaliation (Count II) under Mass. Gen. Laws c. 151B, Compl. ¶¶ 57–67; for wrongful termination in violation of public policy (Count III), *id.* ¶¶ 68–73; and for breach of the implied covenant of good faith and fair dealing (Count IV), *id.* ¶¶ 74–77.

Allen Medical moved for summary judgment on all counts on March 28, 2025. Dkt. 26. Following briefing and oral argument, *see* Dkts. 27–48, the Court took the motion under advisement.

## II. Legal Standard

Summary judgment will only be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Grogan v. All My Sons Bus. Dev. LLC*, 552 F. Supp. 3d 142, 145 (D. Mass. 2021) (quoting Fed. R. Civ. P. 56(a)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"To succeed [on a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Grogan*, 552 F. Supp. 3d at 145 (quoting *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990)) (internal quotations omitted). "The nonmoving party cannot fend off summary judgment unless it makes a competent demonstration that every essential element of its claim or defense is at least trialworthy." *Price v. Gen. Motors Corp.*, 931 F.2d 162, 164 (1st Cir. 1991). "Where the non-moving party bears the ultimate burden of proof, the non-moving party 'must present definite, competent evidence to rebut the motion.'" *Satanic Temple, Inc. v. City of Bos.*, 684 F. Supp. 3d 21, 30 (D. Mass. 2023) (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991)), *aff'd*, 111 F.4th 156 (1st Cir. 2024).

## III. Discussion

### A. Discrimination Based on National Origin (Count I)

A claim for discrimination under Mass. Gen. Laws c. 151B, § 4(1), can be based either on discrete discriminatory acts or on treatment that cumulatively constitutes a hostile work environment. *Windross v. Vill. Auto. Grp., Inc.*, 71 Mass. App. Ct. 861, 863 (2008). Here, the

Court considers Terani's termination as a potential discrete act as well as his cumulative treatment at Allen Medical. Ultimately, both theories survive.

### 1. Termination

The parties agree that Terani's termination as a potentially discriminatory act is properly analyzed through the burden-shifting scheme outlined in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973).[5] Memo. at 6; Dkt. 34 ("Opp.") at 12. For purposes of its present motion, Allen Medical assumes without conceding that Terani can satisfy the initial, prima facie stage of that analysis. Memo at 6. In turn, Terani does not dispute that the purported reason for his firing—an overall reduction in workforce, coupled with a negative performance review, *id.*—would provide a legitimate, non-discriminatory basis. Opp. at 6. Rather, Terani focuses on whether that stated reason was pretextual. *Id.*

On the issue of pretext, Terani raises genuine issues of material fact, precluding summary judgment. The First Circuit has repeatedly warned district courts that when "the issue becomes whether [an] employer's stated nondiscriminatory reason is a pretext for discrimination, courts must be 'particularly cautious about granting [an] employer's motion for summary judgment.'" *Kelley v. Corr. Med. Servs., Inc.*, 707 F.3d 108, 116 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 167 (1st Cir.1998)).

Here, Terani's termination was based in substantial part on his "partially meets expectations" performance review. PSOF ¶¶ 34–37. That review, in turn, incorporated written feedback from other Allen Medical employees, *id.* ¶ 26, including at least one that notably

---

[5] *But see Adams v. Schneider Elec. USA*, 101 Mass. App. Ct. 516, 525 n.20 (2022) (noting differences in the analysis under Massachusetts versus federal law), *aff'd*, 492 Mass. 271 (2023).

described Terani's "entitled attitude" as "culturally based," Dkt. 29-4 at 2.[6] At deposition, Marino was unable to say that the reviewing employee's statement surprised him or made him uncomfortable, Dkt. 31-3 at 35, hardly reassuring to the idea that it was appropriately cabined.[7] Terani also testified as to a similar statement made by Marino himself, Dkt. 33-1 at 37, which Marino claimed not to recall but did not outright deny, Dkt. 31-3 at 21. While Marino's final evaluation does not directly invoke such sentiments, it might reasonably be read to do so implicitly, commending Terani's work ethic but docking his "tone." Dkt. 31-7 at 18.

Finally, Terani has pointed out a meaningful inconsistency in Allen Medical's position. *Adamson v. Walgreens Co.*, 750 F.3d 73, 79 (1st Cir. 2014) (holding that such inconsistencies can evidence pretext). Allen Medical has consistently claimed that the employee retained over Terani "received an overall rating of 'meets expectations' on his [then] most recent annual performance evaluation." *See* Dkt. 31-7 at 4 (Allen Medical MCAD position statement). However, at deposition, Marino testified that he never gave that employee a formal, written evaluation. Dkt. 31-3 at 40. Allen Medical demurs that Marino still could have given the employee an *unwritten* evaluation. *See* Reply at 2. However, the Court finds that the absence of a written evaluation, as seems clearly implied by Allen Medical's prior statements, at least raises a genuine

---

[6] To be certain, one can locate an individual's characteristics within an ethnocultural context without necessarily engaging in discrimination, so long as the individual is, in fact, neutrally judged on the characteristic itself. For its part, Allen Medical argues that references to Terani's "culture" are ambiguous and could, for example, refer to the company "culture" at Allen Medical. Memo. at 9. At summary judgment, however, reasonable inferences are drawn in favor of the non-moving party. *Sparks v. Fid. Nat. Title Ins. Co.*, 294 F.3d 259, 265 (1st Cir. 2002).

[7] This itself could plausibly support liability. *See Ameen v. Amphenol Printed Cirs., Inc.*, 777 F.3d 63, 70–71 (1st Cir. 2015) (discussing "cat's paw liability" where a neutral decisionmaker relies on information tainted by discriminatory animus); *Adams v. Schneider Elec. USA*, 101 Mass. App. Ct. 516, 528 n.23 (2022), *aff'd*, 492 Mass. 271 (2023).

question as to whether any evaluation ever occurred and thus whether Allen Medical's stated justification for Terani's termination is factually true.[8]

### 2. Hostile Workplace

Allen Medical makes both procedural and substantive arguments regarding Terani's hostile-workplace claim. First, it argues that the alleged conduct comprising the claim falls outside the limitations period. Memo. at 10–11. Alternatively, Allen Medical argues that the claim fails on the merits because the events indicated do not rise to the level of severity warranting legal protection. *Id.* at 11–12. Neither argument prevails.

#### a. Statute of Limitations

Terani's hostile workplace claim is barred neither by the 300-day statute of limitations applicable to MCAD administrative complaints[9] nor by the three-year statute of limitations applicable to legal claims under Mass. Gen. Laws c. 151B.[10] Terani's termination occurred on September 30, 2020, PSOF ¶ 39, subsequent to either of the cut-off dates identified by Allen Medical.[11] Accordingly, Terani's termination may serve as the timely "anchoring act" to bring in substantially related conduct from outside the limitations period.[12] *See Furthermore Bd. of Trs. of*

---

[8] Because Massachusetts is a "pretext only" jurisdiction, this is itself sufficient to survive summary judgment. *See Adams*, 101 Mass. App. Ct. at 525 n.20. Under Massachusetts law, a chapter 151B plaintiff need only demonstrate at summary judgment that an employer's stated reason for its adverse action is false and need not go so far as to show that the falsehood conceals a discriminatory intent. *Id.*

[9] *See* Mass. Gen. Laws c. 151B, § 5.

[10] *See* Mass. Gen. Laws c. 151B, § 9.

[11] Allen Medical places the 300-day cut-off on September 25, 2020, and the three-year cut-off on September 13, 2020. Memo. at 11.

[12] Allen Medical argues that Terani's termination is insufficiently related to anchor the hostile-workplace claim. Reply at 3–4. At this stage, particularly where the reason behind Terani's termination remains undetermined, the Court cannot settle this question as a matter of law. Of course, it is true that Terani's hostile-workplace claim now hinges on the facts of his termination and may ultimately fail accordingly.

*IUOE Loc. 4 Pension Fund v. Alongi*, 2024 WL 1973270, at *8 (D. Mass. May 3, 2024) (citing cases).[13]

### b. Merits

"Subject to some policing at the outer bounds," the question of objective severity and pervasiveness, such to sustain a hostile work environment claim, "is commonly one of degree . . . to be resolved by the trier of fact on the basis of inferences drawn 'from a broad array of circumstantial and often conflicting evidence.'" *Gorski v. N.H. Dep't of Corr.*, 290 F.3d 466, 474 (1st Cir. 2002) (quoting *Lipsett v. Univ. of P.R.*, 864 F.2d 881, 895 (1st Cir. 1988)). Particularly given the invective nature of the alleged comments, the Court declines to find, as a matter of law, that Terani cannot establish that he was subject to an abusive work environment.

Accordingly, the Court will deny Allen Medical's motion as to Terani's workplace discrimination claim (Count I).

### B. Retaliation (Count II)

Terani separately alleges that he was terminated in retaliation for challenging his alleged discriminatory treatment at Allen Medical. *See* Compl. ¶¶ 64–67. Specifically, Terani alleges that he made complaints to Allen Medical's Human Resources Department, *id.* ¶¶ 22–26, and posted negative comments about Allen Medical on job review websites, *id.* ¶ 51. Against this retaliation claim, Allen Medical argues—and the Court agrees—that Terani has put forward no evidence that Marino, the primary decisionmaker behind Terani's termination, was aware of either of those

---

[13] Massachusetts law recognizes the "continuing violation doctrine" whereby "a plaintiff who demonstrates a pattern of [discrimination] that creates a hostile work environment and that includes conduct within the [] statute of limitations, may claim the benefit of the continuing violation doctrine and seek damages for conduct that occurred outside the limitations period." *Cuddyer v. Stop & Shop Supermarket Co.*, 434 Mass. 521, 539 (2001); *see also Clifton v. Massachusetts Bay Transp. Auth.*, 445 Mass. 611, 616–17 (2005) (applying the doctrine to claims of retaliation and race-based discrimination).

alleged challenges.[14]  *See* Memo. at 7–8.  Terani does not address Allen Medical's argument at all in his brief.[15]  Opp. at 12–18.[16]

Without this fact in evidence, Terani cannot establish the necessary, causal connection between his alleged protected conduct and the adverse action—"after all, one cannot have been motivated to retaliate by something he was unaware of."  *See Ameen v. Amphenol Printed Cirs., Inc.*, 777 F.3d 63, 70 (1st Cir. 2015) (quoting *Medina–Rivera v. MVM, Inc.*, 713 F.3d 132, 139 (1st Cir. 2013)); *see also Alvarado v. Donahoe*, 687 F.3d 453, 460 (1st Cir. 2012) (finding claim that decisionmaker "should have known" about complaint based on other supervisors' knowledge was insufficient to survive summary judgment).

Accordingly, the Court will allow Allen Medical's motion as to Terani's retaliation claim (Count II).

---

[14] Allen Medical identifies Marino as the relevant decisionmaker.  Memo. at 8.  Terani presents no challenge to this designation or its underlying facts.  *See* Opp. at 12–18; PSOF ¶¶ 34, 37.

[15] Terani leaves explicitly undisputed that, "[a]t the time that [Marino] made the decision to eliminate Terani's position, Marino was unaware that Terani had posted negative comments about Allen Medical."  *See* PSOF ¶ 45.  Terani argues that this statement does not constitute a material fact properly considerable at summary judgment but rather only Marino's "perception" of a material fact.  Dkt. 32-3 at 3 (citing *Reeves v. Safeway Stores, Inc.*, 121 Cal. App. 4th 95, 105–06 (2004)).  But Terani is wrong.  Marino's knowledge is a necessary element of Terani's claim, *see Ameen v. Amphenol Printed Cirs., Inc.*, 777 F.3d 63, 70 (1st Cir. 2015), and Allen Medical's statement is properly framed to dispute it.  *Cf. Reeves*, 121 Cal. App. 4th at 105–06 (admonishing a defendant for framing its statement of fact in terms of witnesses' testimony, rather than as the underlying fact that testimony reflects).  Because Terani presents no substantial counter, Allen Medical's proffered fact is deemed admitted.  *See* Local Rule 56.1.

[16] At deposition, Marino did testify to having a "vague recollection" of learning that someone at Allen Medical had called Terani a "terrorist."  Dkt. 31-3 at 21.  This is the event that allegedly prompted Terani to make a complaint to Human Resources.  Compl. ¶ 24.  However, Terani fails to connect this "vague" memory of the alleged, underlying conduct to Terani's alleged complaint to Human Resources about that conduct.  Terani himself claims to have heard about it secondhand from another Allen Medical employee.  *Id.* ¶ 17.  Thus, even assuming Marino did know about the incident, it does not follow that he learned about it by way of Terani's alleged complaint.  *See also* Dkt. 31-3 at 20–21 (denying knowledge of the complaint).

### C.     <u>**Wrongful Termination and Breach of the Implied Covenant (Counts III and IV)**</u>

Terani also makes overlapping claims for wrongful termination and for breach of the implied covenant of good faith and fair dealing.[17] Compl. ¶¶ 68–77. In short, Terani alleges that he was fired because of whistleblowing activities—*i.e.*, his objections to Allen Medical's allegedly sourcing parts from unapproved vendors. Terani argues that such constitutes a termination in violation of Massachusetts public policy. *Id.*

As a threshold matter, Allen Medical disputes whether the substance of Terani's alleged complaints can qualify him for protection from the "baseline common law rule in Massachusetts [] that an employer may lawfully terminate a relationship with an at-will employee at any time—for any reason, for no reason, and even for a reason that might be seen by some as unwise or unkind."[18] *See Murray v. Warren Pumps, LLC*, 821 F.3d 77, 89 (1st Cir. 2016) (internal citations omitted). The public policy exception to that rule, invoked by Terani, protects workers who are terminated for "asserting a legally guaranteed right," "doing what the law requires," "refusing to do that which the law forbids," or "performing important public deeds, even though

---

[17] In this context, the two causes of action are close cousins. "The same termination may generate both a claim for wrongful discharge and a claim for breach of the implied covenant of good faith and fair dealing." *Apessos v. Mem'l Press Grp.*, 2002 WL 31324115, at *4 (Mass. Super. Sept. 30, 2002); *see also, e.g.*, *Ayan v. Fitchburg State Univ.*, 2019 WL 2237264, at *8 (Mass. Super. Jan. 22, 2019). The only daylight between the two, as far as the Court can see, is that breach of the implied covenant requires the existence of a contract. *See, e.g.*, *Madden v. Ascensus Coll. Sav. Recordkeeping Servs., LLC*, 2021 WL 231298, at *7 (D. Mass. Jan. 22, 2021) ("The fact that plaintiff may not maintain a claim for breach of the implied covenant of good faith and fair dealing in the absence of a contract does not mean that defendant's ability to terminate plaintiff was unrestrained. . . . To the extent that the complaint's allegations that plaintiff's termination violated public policy have merit, they may support a claim for wrongful termination."). Accordingly, Allen Medical's argument that the implied covenant claim requires a specific deprivation of future earnings, Memo. at 17–18, fails for misunderstanding the alleged cause of action. *See Apessos*, 2002 WL 31324115, at *4–5 (establishing the history for the cause of action and setting out its elements).

[18] Allen Medical also argues that Terani is himself personally disqualified from invoking the exception because part of his job was to raise compliance issues. Memo. at 16 n.8. But the cases Allen Medical cites interpret specific federal statutes not relevant here. *See Claudio-Gotay v. Becton Dickinson Caribe, Ltd.*, 375 F.3d 99, 102–03 (1st Cir. 2004) (interpreting section 215(a)(3) of the Fair Labor Standards Act); *Morgan-Lee v. Therapy Res. Mgmt., LLC*, 2023 WL 12036467, at *21 (D. Mass. Nov. 13, 2023) (applying section 3730(h) of the False Claims Act), *aff'd*, 129 F.4th 93 (1st Cir. 2025)).

the law does not absolutely require the performance of such a deed." *Meehan v. Med. Info. Tech., Inc.*, 488 Mass. 730, 733 (2021) (emphasis removed) (internal quotes omitted).[19] As to the fourth category, "where there has been no legislative recognition of the right, an examination of the importance and public nature of the policy at issue in the discharge of the at-will employee is necessary to determine whether it merits protection." *Id.* at 736. Non-mandatory whistleblowing generally falls within this fourth category, *see Mello v. Stop & Shop Companies, Inc.*, 402 Mass. 555, 560 n.6 (1988), but must be of a kind specifically encouraged by the legislature, rather than merely implicating internal policy or the general good, *Wright v. Shriners Hosp. for Crippled Child.*, 412 Mass. 469, 473–74 (1992). Thus, the inquiry turns on the relationship between the at-issue reporting activity and the public policy of the Commonwealth, as intuited by the court. *See Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch.*, 404 Mass. 145, 151 (1989).

While this Court has no difficulty finding that the Commonwealth has a general interest in favor of healthcare-product safety,[20] that would normally be insufficient for purposes of the exception. *See Wright*, 412 Mass. at 473–76 ("We agree with the dissent that the provision of good medical care by hospitals is in the public interest. It does not follow, however, that all health care employees should be immune from the general at-will employment rule simply because they claim to be reporting on issues that they feel are detrimental to health care.") (finding reporting

---

[19] Courts routinely analyze the public policy exception coextensively as between claims for wrongful termination and breach of the implied covenant. *See, e.g.*, *Arroyo v. City of Bos.*, 2021 WL 2338879, at *7 (D. Mass. June 8, 2021) (denying motion to dismiss wrongful termination claim "for the same reason" as it denied a parallel breach claim); *Stammler v. JetBlue Airways Corp.*, 2018 WL 3912245, at *6 (D. Mass. Aug. 15, 2018) (applying finding as to wrongful termination to breach claim).

[20] *See, e.g.*, Mass. Gen. Laws c. 111N (authorizing the Massachusetts Department of Public Health to adopt a "marketing code of conduct" applicable to medical device manufacturers to require that the activities of medical device manufacturer agents be "intended to benefit patients" and "enhance the practice of medicine")

11

activity not covered by the public policy exception where there was no "statute that clearly expresse[d] a legislative policy to encourage" that type of reporting activity). As in *Wright*, Terani points to no Massachusetts authority encouraging the specific kind of reporting activity he alleges as causally connected to his termination.

However, Terani's alleged reporting activities do implicate federal regulations.[21]  *See* Compl. ¶¶ 70, 76. Moreover, the alleged reporting activities concern the manufacturing of medical devices, which is governed by preemptive federal law. *See* 21 U.S.C. § 360k (preemption clause of the Medical Device Amendments of the Food, Drug, and Cosmetic Act). Thus, while it is true that the Massachusetts legislature has not itself endorsed the safety standards Terani claims to have been upholding, that may reasonably be said to follow simply from the simple fact that the Massachusetts legislature is limited in its ability to do so.

Under similar circumstances, courts have held that federal authority may be referenced to fill in certain public policy gaps. In *Norris v. Lumbermen's Mutual Casualty Co.*, 881 F.2d 1144 (1st Cir. 1989), the First Circuit held, under Massachusetts law, that the plaintiff had stated a claim for wrongful discharge where the allegations were that he had been terminated for exposing practices that violated the regulations of the federal Nuclear Regulatory Commission. *Id.* at 1152–53 (citing *Wheeler v. Caterpillar Tractor Co.*, 108 Ill. 2d 502, 511 (1985)). In *Hutson v. Analytic Sciences Corp.*, 860 F. Supp. 6 (D. Mass. 1994), the district court considered the issue squarely under Massachusetts law and concluded that "the Massachusetts Supreme Judicial Court would approve consideration of federal law as a potential source of a well-defined important public

---

[21] Allen Medical argues that Terani was required to specifically name-check the federal regulations at issue when raising the problem internally. *See* Memo. at 15. Terani claims that he did. PSOF ¶ 14. In any event, this is a technical requirement that the law does not demand. *See Chernov v. Home Depot, Inc.*, 78 Mass. App. Ct. 1105, 2010 WL 4178937, at *2 (2010) ("[Plaintiff] had no obligation to identify the exact public safety laws allegedly being violated.").

policy of the Commonwealth," at least where that federal law "concern[s] or involve[s] state public policy." *Id.* at 7–10. This holding was subsequently echoed in cases such as *Tighe v. Career Systems Development Corp.*, 915 F. Supp. 476, 484 (D. Mass. 1996), and *Simas v. First Citizens' Federal Credit Union*, 63 F. Supp. 2d 110, 114–15 (D. Mass. 1999), which have in turn been adopted by numerous other courts, including at least three Massachusetts Superior Courts. *Desouza v. DRS-Power Technology, Inc*, 2008 WL 496657, at *4 (Mass. Super. Jan. 29, 2008) (Lemire, J.) (quoting *Hutson* and denying summary judgment on wrongful termination claim based on law pertaining to federal contractors); *DiGaetano v. Lawrence Firefighters Fed. Credit Union*, 2002 WL 31667318, at *7 (Mass. Super. Nov. 8, 2002) (Houston, J.) (quoting *Simas* and denying summary judgment on wrongful termination claim based on Federal Credit Union Act); *Nelson v. Anika Therapeutics, Inc.*, 2010 WL 366988, at *1 (Mass. Super. Jan. 22, 2010) (Fremont-Smith, J.) (citing *Tighe* and denying motion to dismiss wrongful termination claim based on alleged federal drug safety violations); *see also, e.g.*, *Riley v. Green*, 2002 WL 31680260, at *3 (Mass. Super. Nov. 5, 2002) (basing exceptions on "alleged violations of controlling federal codes");[22] *Hayes v. Massachusetts Bay Transp. Auth.*, 498 F. Supp. 3d 224, 236 (D. Mass. 2020) (ruling that the (federal) First Amendment articulated a well-defined, important public policy for purposes of Massachusetts's wrongful termination cause of action); *Dineen v. Dorchester House Multi-Serv. Ctr., Inc.*, 2014 WL 458188, at *4 (D. Mass. Feb. 3, 2014) ("The policy that gives rise to the exception, the Supreme Judicial Court has suggested, may be a federal, as well as state, policy.") (citing other Massachusetts authority); *cf. Nelson v. Anika Therapeutics, Inc.*, 2011 WL 4056320, at *7–8 (Mass. Super. Aug. 12, 2011) (finding that "reporting of departures from company policy"

---

[22] *Desouza*, *DiGaetano*, *Nelson*, and *Riley* would appear to address the First Circuit's concern in *Murray* as to whether "Massachusetts courts have ever relied on federal authority as the sole source of the state common law wrongful discharge." *See Murray*, 821 F.3d at 91.

that did not implicate any specific FDA regulations "too remote" to fall within the exception), *aff'd*, 83 Mass. App. Ct. 1126 (2013).[23]

The essence of the above-cited cases is that, where Massachusetts law evinces a general statement of its public policy, the details—required under cases such as *Wright*, 412 Mass. at 473–74—may be imported from federal authority. *See Norris*, 881 F.2d at 1153 ("The protection of the lives and property of citizens from the hazards of radioactive material is as important and fundamental as protecting them from crimes of violence, and by the enactment of the legislation cited, Congress has effectively declared a clearly mandated public policy to that effect." (quoting *Wheeler*, 108 Ill. 2d at 511)). This may be especially true where, as here, preemption limits the Massachusetts legislature's ability to weigh in directly. *See Hutson*, 860 F. Supp. at 12 (citing *Norris*, 881 F.2d at 1150). Accordingly, the Court concludes that complaints of the type alleged here, violations of federal regulations governing the manufacturing of medical devices, would implicate the public policy exception to Massachusetts's general at-will employment rule.[24]

Within that legal framework, Terani's claims clearly survive. At bottom, the parties dispute whether Terani was terminated for raising compliance issues or for the supposedly

---

[23] Where the exception admits of federal authority, it makes little sense to distinguish between federal statutes and federal regulations, since each involves the Massachusetts legislature directly to the same null degree. Allen Medical argues otherwise, claiming that regulations generally can never form the basis for the public policy exception. Memo. at 15–16 (citing *Loffredo v. Ctr. for Addictive Behaviors*, 426 Mass. 541 (1998), and *Amato v. Div. of Info. Tech.*, 76 Mass. App. Ct. 1133, 2010 WL 2035538, at *1 (2010) ("The motion judge also noted that the plaintiff has failed to provide any authority extending the public policy protection to policies expressed in rules, regulations, or directives."). In fact, the public policy exception has been applied to both state and federal regulations. *See, e.g.*, *Mercado v. Manny's T.V. & Appliance, Inc.*, 77 Mass. App. Ct. 135, 140 (2010) (basing the exception on Massachusetts licensing regulations); *Elliott-Lewis v. Abbott Lab'ys, Inc.*, 411 F. Supp. 3d 195, 209 (D. Mass. 2019) ("Internal reporting of alleged violations of federal regulations intended to protect public health and safety, such as those forbidding off-label marketing and pre-approval promotion, implicate a sufficiently important public policy and constitute protected activity."). The Massachusetts Supreme Judicial Court has itself explicitly contemplated that the exception would apply to an employee "enforcing safety regulations for which [he] was responsible." *Flesner v. Tech. Commc'ns Corp.*, 410 Mass. 805, 810 (1991) (citing *Hobson v. McLean Hosp. Corp.*, 402 Mass. 413 (1988)).

[24] Terani's allegations also implicate regulations issued by the International Organization for Standardization. Compl. ¶ 70. Terani makes no effort to argue that these non-governmental industry standards can establish Commonwealth public policy, Opp. at 18–19, and the Court finds no support for the proposition.

14

unprofessional way in which Terani went about raising those compliance issues. This is a fine distinction that requires weighing and interpreting the evidence. *See, e.g.*, Dkt. 37-5 at 1 (email exchange between Marino and Terani, wherein Terani raises issue of unapproved vendors and Marino responds, "Ryan – please stop writing these emails. It is not productive, and is not fixing the issue"). There is thus a sufficient nexus between Terani's protected conduct and his termination for the claim to reach the jury.

Accordingly, the Court will deny Allen Medical's motion as to Terani's claims for wrongful termination (Count III) and breach of the implied covenant (Count IV).

## IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is ALLOWED as to the retaliation claim (Count II) but is otherwise DENIED.

**So Ordered.**

Dated: June 9, 2025

/s/ Brian E. Murphy  
Brian E. Murphy  
Judge, United States District Court